UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SYLVIA TOPP,

                              Plaintiff,

          v.

HARRY PINCUS and MONICA PINCUS,

                              Defendants.

Index No. 1:20-cv-10016 (LGS)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER
MOTION FOR SUMMARY JUDGMENT UNDER FED R. CIV. P. 56(a)**

Dated: Chappaqua, New York
          August 30, 2021

NOAH KUPFERBERG, ESQ.
734 King Street
Chappaqua, NY 10514
(646) 335-3968
noahkup@gmail.com

*Attorney for Plaintiff Sylvia Topp*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ iii

PROCEDURAL HISTORY ......................................................................................................... 1

PRELIMINARY STATEMENT .................................................................................................. 1

STANDARD OF DECISION ...................................................................................................... 1

APPLICABLE STATUTE............................................................................................................ 2

ARGUMENT ................................................................................................................................ 2

I.   UNDER RPAPL ART. 9, PLAINTIFF HAS A RIGHT TO PARTITION BY SALE ............ 2

    A.   THE 5TH FLOOR IS A SINGLE PIECE OF PROPERTY UNDER THE LAW ...... 2

    B.   THE PARTIES OWN THE 5TH FLOOR AS TENANTS-IN- COMMON .............. 3

    C.   THE 5TH FLOOR CANNOT BE PHYSICALLY PARTITIONED WITHOUT "GREAT PREJUDICE," AND THEREFORE MUST BE SOLD AT AUCTION..... 7

        1. Physical Partition Would Result in Unviable and Illegal Parcels.................7

        2. Value Would be Materially Diminished by Physical Partition..........................10

    D.   THE PROCEEDS FROM THE SALE OF THE 5TH FLOOR MUST BE DIVIDED EQUALLY BETWEEN THE PARTIES................................................................. 11

II.   DEFENDANTS' MOTION UNDER RULE 19 FAILS BECAUSE THE COOP IS NEITHER A "NECESSARY" NOR AN "INDISPENSIBLE" PARTY ............................. 11

CONCLUSION............................................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)................................................................................................ 2

*Bellnier v. Bellnier*,
  550 N.Y.S.2d 963 (4th Dep't 1990)........................................................................ 9

*Butler v. Rafferty*,
  762 N.Y.S.2d 567 (2003)........................................................................................ 7

*C.D.S. v. Zetler*,
  198 F. Supp. 3d 323 (S.D.N.Y. 2016) .................................................................. 12

*Chamberlin v. Gleason*,
  163 N.Y. 214 (1900)............................................................................................... 6

*Chiang v. Chang*,
  529 N.Y.S.2d 294 (1st Dep't 1988) ........................................................................ 1

*Coster v. Coster*,
  21 N.Y.S. 203 (2d Dep't 1892).............................................................................. 10

*Crawley v. Shelby*,
  323 N.Y.S.2d 222 (3d Dep't 1971) ......................................................................... 5

*D'Addario v. Cavoto*,
  359 N.Y.S.2d 421 (N.Y. Civ. Ct. 1974) ................................................................. 7

*David v. David*,
  9 N.Y.S. 256 (1st Dep't 1890) .............................................................................. 10

*Ente Nazionale v. Prudential*,
  744 F. Supp. 450 (S.D.N.Y. 1990) ................................................................. 12, 13

*Envirotech v. Bethlehem*,
  729 F.2d 70 (2d Cir. 1984).................................................................................... 14

*Est. of Menon v. Menon*,
  756 N.Y.S.2d 639 (2d Dep't 2003)......................................................................... 5

*Ferguson v. McLoughlin,*
    584 N.Y.S.2d 816 (1st Dep't 1992) ........................................................................................ 8

*Frilando v. NYC,*
    463 F. Supp. 3d 501 (S.D.N.Y. 2020) ................................................................................... 2

*Gallagher v. New York State Bd. of Elections,*
    477 F. Supp. 3d 19 (S.D.N.Y. 2020) ................................................................................... 13

*Goetz v. Slobey,*
    908 N.Y.S.2d 237 (2d Dep't 2010) ...................................................................................... 7

*Goldman v. Goldman,*
    95 N.Y.2d 120 (2000) ............................................................................................................ 4

*Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC,*
    742 F. Supp. 2d 446 (S.D.N.Y. 2010) ................................................................................ 11

*Harrison v. DeLuke,*
    229 N.Y.S.2d 945 (N.Y. Cty. Ct. 1962) ............................................................................. 6

*Hufnagel v. Bruns,*
    542 N.Y.S.2d 652 (1st Dep't 1989) ...................................................................................... 9

*In re Lloyd's,*
    954 F. Supp. 656 (S.D.N.Y. 1997) ..................................................................................... 13

*Island Fed. Credit Union v. Smith,*
    875 N.Y.S.2d 198 (2d Dep't 2009) .................................................................................. 3, 4

*Jaser v. New York Prop. Ins. Underwriting Ass'n,*
    815 F.2d 240 (2d Cir. 1987) ............................................................................................... 14

*Kristel v. Steinberg,*
    69 N.Y.S.2d 476 (N.Y. Mun. Ct. 1947) ............................................................................. 6

*Loughran v. Cruickshank,*
    778 N.Y.S.2d 225 (3d Dep't 2004) ...................................................................................... 8

*Makarchuk v. Makarchuk,*
    938 N.Y.S.2d 697 (4th Dep't 2012) ...................................................................................... 7

*Manganiello v. Lipman,*
    905 N.Y.S.2d 153 (1st Dep't 2010) ...................................................................................... 1

*Marvel Characters, Inc. v. Kirby,*
   726 F.3d 119 (2d Cir. 2013) ................................................................. 13

*Melnick v. Press,*
   809 F. Supp. 2d 43 (E.D.N.Y. 2011). ............................................... 4, 11

*Myers v. Bartholomew,*
   91 N.Y.2d 630 (1998) ........................................................................... 7

*Overheiser v. Lackey,*
   207 N.Y. 229 (1913) ............................................................................. 5

*Reister v. Town Bd. of Town of Fleming,*
   18 N.Y.2d 92 (1966) ............................................................................. 4

*Rosen v. Rosen,*
   432 N.Y.S.2d 921 (3d Dep't 1980) ....................................................... 1

*Schneidman v. Steckler,*
   169 N.Y.S.2d 963 (N.Y. Sup. Ct. 1957) ............................................... 1

*Slade v. Hornick,*
   71 N.Y.S.2d 302 (1st Dep't 1947) ........................................................ 7

*Snyder Fulton St., LLC v. Fulton Int., LLC,*
   868 N.Y.S.2d 715 (2d Dep't 2008) ..................................................... 10

*Stein v. Robb,*
   2010 N.Y. Misc. LEXIS 1362, *6 ....................................................... 12

*Trustees v. Fireservice,*
   384 F. Supp. 3d 412 (S.D.N.Y. 2019) ........................................... 12, 13

*United States v. Mallery,*
   48 F.2d 6 (2d Cir. 1931) ....................................................................... 6

*Van Meter v. Kelly,*
   115 N.Y.S. 943 (N.Y. Sup. Ct. 1909) .................................................. 9

*von Bulow v. von Bulow,*
   634 F. Supp. 1284 (S.D.N.Y. 1986) ................................................... 14

**Constitutional Provisions**

U.S. Const. art. III, § 2, cl. 1 ................................................................................. 15

**Statutes**

N.Y. Est. Powers & Trusts Law § 6-2.1 ........................................................ 3, 4, 5

N.Y. Est. Powers & Trusts Law § 6-2.2(a) ......................................................... 5

N.Y. Real Prop. Acts. Law article 9 ........................................................... 12, 15

N.Y. Real Prop. Acts. Law § 901 ....................................................... 1, 2, 4, 7, 11

N.Y. Real Prop. Acts. Law § 915 ............................................................ 1, 7, 11

**Rules**

Fed. R. Civ. P. 19(a) ............................................................................... 13, 15

Fed. R. Civ. P. 19(b) ......................................................................... 13, 14, 15

Fed. R. Civ. P. 56(a) ................................................................................. 1, 15

**Treatises**

24 N.Y. Jur. 2d Cotenancy and Partition § 17 ............................................. 4, 5

4 Tiffany Real Prop. § 1245 (3d ed.) ............................................................... 6

86 C.J.S. Tenancy in Common § 1 ........................................................... 4, 5, 6

86 C.J.S. Tenancy in Common § 5 ................................................................. 4

Freeman, *Cotenancy and Partition* § 92 .......................................................... 6

Freeman, *Cotenancy and Partition* § 96 .......................................................... 6

**Other Authorities**

*Estate*, Black's Law Dictionary ...................................................................... 3

*Severalty*, Black's Law Dictionary ............................................................... 3, 4

## PROCEDURAL HISTORY

As per this Court's instructions at the July 29, 2021, pre-motion conference, Plaintiff relies on her prior submissions at ECF Nos. 27, 32, 44, 51, 59, and 62—and the law and arguments contained therein—in support of her Motion for Summary Judgment. Plaintiff hereby submits this brief as a supplement to those prior submissions, and in further support thereof.

For a summary of the **FACTS** underlying this action, Plaintiff respectfully directs the Court to Plaintiff's Memorandum of Law in Support of her 12(c) Motion (ECF No. 44) at 3-5.

## PRELIMINARY STATEMENT

Partition is "the act or proceeding by which co-owners of property cause it to be divided into as many shares as there are owners, according to their interests therein, or if that cannot be equitably done, to be sold for the best obtainable price and the proceeds distributed according to the respective interests." *Chiang v. Chang*, 529 N.Y.S.2d 294, 295 (1st Dep't 1988). Any joint tenant or tenant in common has ***the absolute right to partition of the co-owned property*** under N.Y. RPAPL § 901.[1] Should the Court find that the 5th Floor is a single piece of property (***see*** **§ I.A.** *infra*) owned by the parties as tenants in common (**§ I.B.**), it must then determine whether the property can be physically partitioned "without great prejudice," N.Y. RPAPL § 901. As explained below, *it cannot* (**§ I.C.**), and therefore, by the express terms of § 915, the 5th Floor must be sold at auction and the proceeds divided according to the parties' interests (**§ I.D.**).

## STANDARD OF DECISION UNDER FED. R. CIV. P. 56(a)

Summary judgment is appropriate "where the record establishes that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"

---

[1] *See, e.g., Manganiello v. Lipman*, 905 N.Y.S.2d 153, 155 (1st Dep't 2010) ("Pursuant to both the common law and statute, a party, jointly owning property with another, may ***as a matter of right***, seek physical partition of the property or partition and sale when he or she no longer wishes to jointly use or own the property."); *Rosen v. Rosen*, 432 N.Y.S.2d 921, 923 (3d Dep't 1980) ("It is well settled that partition among tenants in common of real property ***is a matter of right*** where the tenants no longer desire to hold the property in common."); *Schneidman v. Steckler*, 169 N.Y.S.2d 963, 966 (N.Y. Sup. Ct. 1957) ("Partition between tenants in common ***is an absolute right*** under common law and that right is perpetuated in the statutes of this state").

*Frilando v. NYC*, 463 F. Supp. 3d 501, 510 (S.D.N.Y. 2020). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## APPLICABLE STATUTE

A person holding and in possession of real property as joint tenant or tenant in common . . . may maintain an action for the partition of the property, and for a sale if it appears that a partition cannot be made without great prejudice to the owners.

N.Y. Real Prop. Acts. Law § 901 (McKinney 2021).

## ARGUMENT

## I.  UNDER RPAPL ART. 9, PLAINTIFF HAS A RIGHT TO PARTITION BY SALE

Because the 5th Floor is a single piece of property (§ I.A.), owned by the parties as tenants in common (§ I.B.), which cannot be physically partitioned without "great prejudice" (§ I.C.), it must be sold at auction, with the proceeds divided evenly between the parties (§ I.D.).

### A.  THE 5TH FLOOR IS A SINGLE PIECE OF PROPERTY UNDER THE LAW

For Plaintiff's extensive briefing on this point, the Court is respectfully directed to:

(1) Plaintiff's Memorandum of Law in Support of her 12(c) Motion (ECF No. 44) at 7-12;
(2) Plaintiff's Reply Brief in Support of her 12(c) Motion (ECF No. 51) at 1-4; and
(3) Plaintiff's Letter Motion for Summary Judgment (ECF No. 59), at 1-2.

As further support for Plaintiff's arguments on this point, the Court is also directed to:

(4) the uncontroverted expert testimony of architect Arthur Atlas (Exh. A)[2]; and
(5) the Rule 30(b)(6) deposition testimony of the New York City DOB (Exh. B at 4-12).[3]

---

[2] The Atlas expert report states that, *inter alia*: (1) CO # 79468 is the "current and operative Certificate of Occupancy" for the Building; (2) CO # 79468 permits only one dwelling unit per floor, including the 5th Floor; (3) the 1968 NYC Building Code prohibits any occupancy or use inconsistent with the last-issued CO "unless a new certificate of occupancy is issued"; (4) there is no record of a new CO being issued, nor of any filing seeking the division of the 5th Floor; (5) the two dwelling units on the 5th Floor have thus "been illegally constructed and exist illegally"; and (6) the failure to obtain a new CO reflecting this informal division means that "***the DOB recognizes the entire Fifth Floor as one undivided dwelling unit*** and in terms of the New York City Building Code ***there is only one dwelling unit on the Fifth Floor of 160 Sixth Avenue***" (emphasis added). [**N.B.**, Defendants have not engaged an expert, and provide no expert testimony—likely because they could find no one willing to testify to their absurd claim that an individual landlord is empowered, without DOB approval, to determine the legal division of real property in New York City. As a result, the testimony of Plaintiff's expert is uncontroverted.]

[3] The DOB's designee, Inspector Keith Henry, testified that, *inter alia*: (1) the current CO for the Building is # 79468; (2) the current CO indicates one apartment on the 5th Floor; (3) Defendants' DOB applications were mislabeled and misfiled and, had they been properly submitted, would have been rejected.

### B.  **THE PARTIES OWN THE 5TH FLOOR AS TENANTS-IN-COMMON**

As the 5th Floor is by law a single piece of property (*see* § I.A. *supra*), the next issue, as the Court has noted, is the nature of the parties' ownership of this single piece of property.

Defendants vehemently (if somewhat incoherently) deny that the parties are "tenants in common." *See* Defendants' Opposition (ECF No. 63) at 3 ("the bare facts show Tashikan's the [sic] conveyance of separate stock, separate proprietary leases, separate apartments, accordingly the absence of any demarcation constituting 'tenants in common' is definitive").[4] This adamant denial leaves both Plaintiff and the Court to wonder just what sort of concurrent estate[5] Defendants imagine exists between the parties. ***There are only three choices: Joint Tenancy***; ***Tenancy in Common***, and ***Tenancy by the Entirety***.[6] The types of estates have been formalized in the Consolidated Laws of New York: "Estates as to the number of persons owning an interest therein are classified as follows: **(1)** In severalty. **(2)** Joint tenancy. **(3)** Tenancy in common. **(4)** [And] tenancy by the entirety." N.Y. Est. Powers & Trusts Law § 6-2.1. Let us consider each:

   **(1) IN SEVERALTY:** "The phrase *in severalty* means 'in exclusive ownership'"; *i.e.*, "The holding of land in one's own right . . . a sole tenancy." *Severalty*, Black's Law Dictionary (11th ed. 2019). Thus, this form of ownership is the only one of the four listed in the statute that is ***NOT a concurrent estate***.

   **(2) JOINT TENANCY:** A joint tenancy "is defined as an estate held by two or more persons jointly, with equal rights to share in its enjoyment during their lives, and creating in each joint tenant a right of survivorship." *Island Fed. Credit Union v. Smith*, 875 N.Y.S.2d 198, 200 (2d Dep't 2009) (internal quotations and citations omitted). A joint tenancy "has four requisites, also known as the four unities: (1) unity of interest; (2) unity of title; (3) unity of time; and (4) unity of possession or seisin. . . . Thus, where two or more people acquire an individual interest in property

---

[4] Defendants' denial is understandable, if futile, as partition is an absolute right of tenants in common. *See* n.1 *supra*.
[5] "Concurrent estate" is an omnibus term, meaning simply, "Ownership or possession of property by two or more persons at the same time." *Estate*, Black's Law Dictionary (11th ed. 2019). By definition, then, if the 5th Floor is a single piece of property—as demonstrated in § I.A., *supra*—it is a "concurrent estate," since both parties to this action hold stock certificates and proprietary leases granting them ownership rights in the 5th Floor.
[6] *See* 86 C.J.S. Tenancy in Common § 1 (only "[t]hree English common law legal structures for the concurrent ownership of property have survived into modern times: [1] tenancy in common, [2] joint tenancy, and [3] tenancy by the entirety. Of these, tenancy in common is the most common form . . . ."); *see also Estate*, Black's Law Dictionary (11th ed. 2019) ("In modern practice, there are three types of concurrent estates: [1] tenancy in common, [2] joint tenancy, and [3] tenancy by the entirety.").

. . . by different conveyances, the estate created is not a joint tenancy." 24 N.Y. Jur. 2d Cotenancy and Partition § 17.

**(3) TENANCY IN COMMON:** A tenancy in common is "the holding of property by several persons by several and distinct titles, with unity of possession only. Stated another way, a tenancy in common is a form of ownership in which each cotenant owns a separate fractional share of undivided property." 86 C.J.S. Tenancy in Common § 1. "The principal distinction between joint tenancy and tenancy in common is the right of survivorship, because upon the death of a tenant in common, that tenant's share passes to his or her heirs rather than to the cotenants." *Id.* at § 5.

**(4) TENANCY BY THE ENTIRETY:** "A tenancy by the entirety is a form of real property ownership available only to parties married at the time of the conveyance." *Goldman v. Goldman*, 95 N.Y.2d 120, 122 (2000). The "salient characteristic [of a tenancy by the entirety] is the unique relationship between a husband and his wife each of whom is seized of the whole and not of any undivided portion of the estate." *Reister v. Town Bd. of Town of Fleming*, 18 N.Y.2d 92, 95 (1966).

TO START: Because the 5th Floor is a single piece of property (*see* § I.A. *supra*), owned concurrently by Plaintiff and Defendants (*see* § I.D. *infra*), it is **NOT** owned **In Severalty**, which by definition is an "exclusive ownership" or "sole tenancy." *Severalty*, Black's Law Dictionary (11th ed. 2019). Further, because Topp and Pincus are not (and have never been) married, the 5th Floor is **NOT** owned as a **Tenancy by the Entirety**, which is "a form of real property ownership available only to parties married at the time of the conveyance." *Goldman*, 95 N.Y.2d at 122.

This leaves **Joint Tenancy** and **Tenancy in Common** as the **ONLY** remaining possibilities under N.Y. Est. Powers & Trusts Law § 6-2.1.[7] The differences between them are:

1. **RIGHT OF SURVIVORSHIP:** A Joint Tenancy "creat[es] in each joint tenant a right of survivorship," *Island v. Smith*, 875 N.Y.S.2d at 200, while in a Tenancy in Common, no such right exists, *Melnick v. Press*, 809 F. Supp. 2d 43, 58 (E.D.N.Y. 2011).

2. **FOUR UNITIES v. ONE:** A Joint Tenancy "has four requisites, also known as the four unities: (1) unity of interest; (2) unity of title; (3) unity of time; and (4) unity of possession or seisin," 24 N.Y. Jur. 2d Cotenancy and Partition § 17, while a Tenancy in Common is "the holding of property by several persons by several and distinct titles, with unity of possession only," 86 C.J.S. Tenancy in Common § 1.

---

[7] It must be noted that, under the applicable statute, **partition is available for BOTH Joint Tenancy and Tenancy in Common**: "A person holding and in possession of real property *as joint tenant or tenant in common* . . . may maintain an action for the partition of the property . . . ." N.Y. RPAPL § 901 (emphasis added). As a result, even if the analysis were to stop right here, **Plaintiff has already established her right to partition** under New York law.

Defendants nowhere claim that the parties to this action have a right of survivorship with respect to their interests in the 5th Floor. Nor do they allege—let alone demonstrate—that the conveyance of the 5th Floor was made with: (1) unity of interest; (2) unity of title; and (3) unity of time.[8] As a result, because there is no right of survivorship, and because at least one of the four unities is absent, the 5th Floor cannot be a Joint Tenancy *as a matter of law*, leaving Tenancy in Common as the **ONLY** possible concurrent estate under § 6-2.1.

As if all this were not proof enough, the relevant statute leaves not a shadow of a doubt: "A disposition of property to two or more persons creates in them a tenancy in common, *unless expressly declared to be a joint tenancy*." *Id.* at § 6-2.2(a) (emphasis added). To overcome this strong default presumption, "a party must establish by clear and convincing evidence that a joint tenancy was intended . . . rather than a tenancy in common," *Est. of Menon v. Menon*, 756 N.Y.S.2d 639, 641 (2d Dep't 2003), and such an intention will be given effect only if it can be gathered from the instrument that created the ownership interests, *Crawley v. Shelby*, 323 N.Y.S.2d 222, 223 (3d Dep't 1971).[9] In the case at bar, there was never any declaration—express or otherwise—in any of the relevant instruments that the 5th Floor was to be a joint tenancy. Therefore, under the express terms of N.Y. Est. Powers & Trusts Law § 6-2.2(a), *the 5th Floor is a tenancy in common by operation of law*.[10]

---

[8] Such an allegation would in any case be fruitless, since Defendants have admitted multiple times that the 5th Floor was conveyed to the parties by two different stock certificates and two different proprietary leases. *See, e.g.*, Answer (ECF No. 22) ¶¶ 17, 20, 21, 23, 25. Thus, "where two or more people acquire an individual interest in property . . . by different conveyances, the estate created *is not a joint tenancy*." 24 N.Y. Jur. 2d Cotenancy and Partition § 17.

[9] *See also Overheiser v. Lackey*, 207 N.Y. 229, 232-33 (1913) (public policy favors tenancies in common over joint tenancies to encourage distribution of land with separate and distinct title, unencumbered by right of survivorship).

[10] Further, it is abundantly clear that—despite Defendants' weak insistence to the contrary (*see, e.g.*, Defendants' Letter Opposition (ECF No. 63) at 3)—no formal declaration or agreement between the parties is required to establish a tenancy in common. As noted *supra*, § 6-2.2(a) makes a tenancy in common *the default form of concurrent estate*, without reference to any formal requirements—including an agreement among the parties. The caselaw too is plain. As the Second Circuit has explicitly held, **"the use of technical words to create . . . a tenancy in common . . . is not necessary."** *United States v. Mallery*, 48 F.2d 6, 7 (2d Cir. 1931) (emphasis added).

***Further, as a necessary aside:*** Defendants grossly, if not intentionally, misrepresent the **"unity of possession"** element. Unity of possession is ***NOT***, as Defendants would have the Court believe, a factor that must be proven by Plaintiff to establish a tenancy in common.[11] On the contrary, unity of possession—as an essential attribute of a tenancy in common—arises automatically at the moment of its establishment.[12] Indeed, "It is axiomatic that tenants in common have a unity of possession." *Harrison v. DeLuke*, 229 N.Y.S.2d 945, 946 (N.Y. Cty. Ct. 1962), by reason that "unity of possession [is] the only unity which exists in all forms of co-ownership," *Kristel v. Steinberg*, 69 N.Y.S.2d 476, 490 (N.Y. Mun. Ct. 1947). Thus, where—as here—there is a concurrent estate *of any kind at all*, unity of possession follows by definition.[13]

Finally, there is ***absolutely no authority*** for Defendants' proposition that the mere fact that the tenants in common here do not literally live together somehow destroys the unity of possession (*see, e.g.*, Defendants' Motion to Dismiss (ECF No. 41), at 10). **IN FACT**, numerous New York courts—going back nearly 100 years—have held exactly the opposite. *See, e.g.*:

---

[11] Importantly, the fact that the parties received separate proprietary leases and separate stock certificates—on which Defendants largely rely in arguing against a tenancy in common on the 5th Floor (*see, e.g.*, Defendants' Memo of Law in Opposition (ECF No. 45), at 2)—is irrelevant. ***IN FACT,*** while unity of title is a requirement of a joint tenancy, it is expressly ***not*** a requirement of a tenancy in common, which is defined as "the holding of property by several persons ***by several and distinct titles***, with unity of possession only." 86 C.J.S. Tenancy in Common § 1.

[12] A tenancy in common may arise out of what was before an estate in severalty, by . . . a grant or devise of such estate to two or more persons." Freeman, *Cotenancy and Partition* § 92. This is precisely what happened here: the Coop granted the 5th Floor—previously held by the Coop in severalty, and undivided under every CO the Building has ever had—to both Topp and Pincus. A tenancy in common is also created "whenever the title of real estate is such that neither of the owners can locate his part." *Id.* at § 96. Here, where neither the incorporation agreement, nor the proprietary leases, nor the stock certificates, nor any other document purports to grant any particular part of the 5th Floor to either party (*see* Plaintiff's Reply (ECF No. 51), at 4 (Chart "A")) "the title . . . is such that neither of the owners can locate his part," and they are therefore tenants in common of the entire undivided estate.

[13] By way of further explanation: The "unity of possession" element exists ***NOT*** as a hurdle to those who—as here—have together purchased a single piece of property, but rather to distinguish tenants in common from those who hold a ***less-than-currently-possessory interest*** in the property, as, for example, a **remainder-man** or a **tenant subject to an executory limitation**. *See, e.g., Chamberlin v. Gleason*, 163 N.Y. 214, 218 (1900) ("The tenant for life and the remainder-men are not tenants in common, since the possession of the tenant for life is exclusive of like possession by the remainder-men" and, therefore, the essential unity of possession or the right to possession is lacking); 4 Tiffany Real Prop. § 1245 (3d ed.) (no unity of possession where the parties "have successive rights of possession, as when . . . one is tenant in fee simple, subject to an executory limitation in favor of the other").

- *Butler v. Rafferty*, 762 N.Y.S.2d 567, 570 (2003) (although a tenancy in common grants "each cotenant [the right] to use and enjoy the property as would a sole owner[,]" ***tenants in common may agree to forego this right*** by "contract[ing] otherwise");

- *Slade v. Hornick*, 71 N.Y.S.2d 302, 303 (1st Dep't 1947) (***tenants in common may even agree that "one of them shall have exclusive possession*** of the common property");

- *Myers v. Bartholomew*, 91 N.Y.2d 630, 632-33 (1998) (***nonpossessory cotenants "do not relinquish any of their rights as tenants-in-common*** when another cotenant assumes exclusive possession of the property");

- *Goetz v. Slobey*, 908 N.Y.S.2d 237, 239 (2d Dep't 2010) (co-owner ***did not destroy unity of possession by moving from the property***);

- *Makarchuk v. Makarchuk*, 938 N.Y.S.2d 697, 700 (4th Dep't 2012) (tenants in common have the right "to use and enjoy the entire property as would a sole owner ***whether or not they are in actual possession*** of the premises") (internal quotation and citation omitted);

- *D'Addario v. Cavoto*, 359 N.Y.S.2d 421, 423 (N.Y. Civ. Ct. 1974) ("Despite the basic concept of unity of possession inherent in tenancies in common, tenants in common are competent to agree among themselves," and thus, "[a] fortiori ***the tenants have the right to divide the possession of the freehold in any manner they desire***") (emphasis added).

## C.  THE 5TH FLOOR CANNOT BE PHYSICALLY PARTITIONED WITHOUT "GREAT PREJUDICE," AND THEREFORE MUST BE SOLD AT AUCTION

In determining whether physical partition or partition by sale is the appropriate remedy, New York courts ask two questions: (1) Whether physical partition would result in unviable or illegal parcels; and (2) Whether the value of the entire unpartitioned property would be materially diminished by the proposed physical partition. If the answer to ***either*** question is **YES,** then "a partition cannot be made without great prejudice to the owners," RPAPL § 901, and the property must "be sold at public auction," RPAPL § 915. Here, as laid out below, the answer to **both** questions is **YES**, and therefore ***the 5th Floor must be partitioned by sale***.

### 1.  Physical Partition of the 5th Floor Would Result in Unviable and Illegal Parcels

In the New York jurisprudence on partition, stretching back over 100 years, whenever there has been the slightest concern about the legality of the parcels that would result from a proposed physical partition, that concern *alone* has been sufficient to create "great prejudice" under the statutory meaning, such that partition by sale must be ordered. Here, the DOB has

***already declared the illegality*** of the proposed new parcels (*see* New York City DOB Violation No. 35101854Y (Exh. C) ("Illegal occupancy noted: Floor illegally divided into two class 'A' apt.")), which is more than sufficient for this Court to find that the physical partition of the 5th Floor would create "great prejudice" and to therefore order its sale.

As the Appellate Division held in *Loughran v. Cruickshank*, 778 N.Y.S.2d 225, 227-28 (3d Dep't 2004), property must be sold rather than physically partitioned where: (1) physical partition would leave some parcels without those attributes necessary to make them viable and independent (in *Loughran*, road access); (2) it would be extremely difficult to divide the property into economically equitable parcels; and (3) Defendant's proposed partition would make the new parcels less valuable, *if not unmarketable*, thereby implying great prejudice and the unsuitability of physical partition. **HERE TOO:** (1) physical partition of the 5th Floor would leave the new south parcel without those attributes necessary to make it viable and independent (here, legal light and air[14]); (2) it would be extremely difficult to divide the property into economically equitable parcels since the south half, to quote Defendant, "cannot be occupied, sublet or sold as an independent apartment or studio" (Compl. (ECF No. 1) ¶ 131); and (3) physical partition would make the new south parcel significantly less valuable, *if not unmarketable*, for the same reason, thereby implying "great prejudice" and the unsuitability of physical partition.

In *Ferguson v. McLoughlin*, 584 N.Y.S.2d 816, 817 (1st Dep't 1992), the First Department held that a building with, *inter alia*, one gas service main, one main water supply, one fire escape, and one stairway, was so situated that a division of the realty "would destroy its marketability and render it virtually inalienable," and thus, as a matter of law, physical partition could not be made without great prejudice to owners, and a sale was warranted. **HERE TOO** the

---

[14] As noted in the Complaint (ECF No. 1), the underlying roadblock to legally dividing the 5th Floor is that the eight large windows on the south half of the floor—though featuring exceptional natural light (Compl. ¶ 105)—are "lot-line" windows, and thus cannot provide legal light and air (Compl. ¶¶ 74, 100, 106).

5th Floor has one gas service main (Answer (ECF No. 22) at ¶ 42), one main water supply (Answer at ¶¶ 41, 45(e)), one fire escape (Answer at ¶¶ 45(a), 54), and one stairway (Answer at ¶¶ 38, 45(b)), and is therefore so situated that physical partition of the realty "would destroy its marketability and render it virtually inalienable." Therefore, as a matter of law, physical partition of the 5th Floor cannot be made without great prejudice, and a sale is warranted.

The court in *Van Meter v. Kelly*, 115 N.Y.S. 943, 945-46 (N.Y. Sup. Ct. 1909) held that, where the parcels at issue could be physically partitioned only by dividing them into small, narrow strips—most of them inaccessible to the highway—an actual partition would be entirely impracticable and could not be accomplished without great prejudice to the parties, and therefore the parcels must be sold and the proceeds divided. **HERE TOO**, physical partition would create an orphaned, rump half-unit in the south of the 5th Floor, lacking the bare necessities of a viable property (in our case, legal light and air), and thus actual partition would be entirely impracticable and could not be accomplished without great prejudice, and as a result, the 5th Floor must be sold and the proceeds divided.[15]

**FINALLY,** as the New York Appellate Division held in *Bellnier v. Bellnier*, 550 N.Y.S.2d 963, 964-65 (4th Dep't 1990), where there is uncontroverted evidence that the subject property, if divided, would not meet local zoning requirements, and the possibility of obtaining a variance is speculative, the property cannot be partitioned "without great prejudice," and must be sold at public auction. **HERE TOO,** there is uncontroverted evidence that the 5th Floor, if divided, would not meet DOB requirements, since the DOB has already fined the Coop nearly

---

[15] Interestingly, the court in *Hufnagel v. Bruns*, 542 N.Y.S.2d 652, 654 (1st Dep't 1989) ordered the partition by sale of a Soho loft on a different theory where, *inter alia*, it was: (1) unclear how Defendant could afford to pay the cost of dividing the apartment; and (2) uncertain that the cooperative board would approve the division; **HERE TOO**: (1) Defendants cannot afford the cost of dividing the 5th Floor (a cost estimated at $200,000—on information and belief, the full extent of Defendants' savings), even if they contemplated such payment, which they do not; and (2) it is uncertain *at best* that the coop board would approve the proposed division, since the board is in litigation *right now* seeking to force the 5th Floor to remain a single unit—its third litigation against the parties in the last six years.

$40,000 and counting for "Illegal occupancy . . . Floor illegally divided into two class 'A' apt." (Compl. (ECF No. 1) ¶¶ 113, 127; Answer ¶¶ 113, 125), and the possibility of obtaining a variance is speculative *at best*, since no less than three variance applications *have already been denied* (Compl. ¶¶ 93, 96, 102); in fact, of course, it is this perpetual inability to physically divide the 5th Floor that has led the parties to this Court. **IN SHORT**, the physical division of the 5th Floor has *already been attempted*, and has *already failed*.

### 2.  The Value of the 5th Floor Would be Materially Diminished by Physical Partition

In determining whether physical partition or partition by sale is the appropriate remedy, the other question before the court is "whether the whole property, taken together, will be greatly injured or diminished in value if separated into parts . . . in other words, whether the aggregate value of the several parts when held by different individuals in severalty would be materially less than the whole value of the property if owned by one person." *Snyder Fulton St., LLC v. Fulton Int., LLC*, 868 N.Y.S.2d 715, 717 (2d Dep't 2008) (internal quotations and citations omitted).[16]

Applying this rule, the *Snyder* court held that, even though the trial court had properly concluded that no physical obstacle or peculiarity of the site prevented its physical partition *and* that it was possible to physically partition the property such that two viable parcels would result (thus satisfying the "viability" factors addressed in § I.C.1. *supra*), the estimated $1.2 million loss of value to the *overall property* that would result—amounting to a mere 1.5% diminution of its pre-division value—*in itself* constituted great prejudice, and therefore the subject property must be sold at public auction. *Id.*  **HERE**, even if it were possible to physically partition the 5th Floor so that two viable legal parcels would result (it is not; *see* § I.C.1. *supra*), such a division would result in a massive loss to the overall value of the 5th Floor, since the space on the south

---

[16] The framing of this rule is consistent with New York holdings going back 130 years. *See, e.g.*, *Coster v. Coster*, 21 N.Y.S. 203, 203 (2d Dep't 1892); *David v. David*, 9 N.Y.S. 256, 257 (1st Dep't 1890).

half would be without legal light and air, making the proposed new parcel, in the words of the Coop's architect "virtually worthless," as it could not be legally occupied. (Compl. ¶ 115.)

**IN SUM**, because the physical partition of the 5th Floor would result in unviable, illegal parcels, and the value of the 5th Floor would thus be materially diminished, a physical split "cannot be made without great prejudice." N.Y. RPAPL § 901. In such situations, *sale at auction is required* under N.Y. RPAPL § 915, and therefore the 5th Floor must be sold at auction.

### D. THE PROCEEDS FROM THE SALE OF THE 5TH FLOOR MUST BE DIVIDED EQUALLY BETWEEN THE PARTIES

There is no legitimate dispute regarding the fact that the Coop sold, and both parties purchased, *an equal share* in the undivided 5th Floor. To start, there is a strong presumption that tenants in common hold the subject property in equal interests. *Melnick v. Press*, 809 F. Supp. 2d at 57. Here, this presumption is strongly supported by the Coop Incorporation Agreement (Exh. D, at 2), which gives each party **(1)** "Joint occupancy of [the] 5th floor," and records **(2)** an identical Capital Contribution ($4080), Loan amount ($1000), and Number of Shares (1) for each. *This equal division* is also reflected in **(3)** the stock certificates themselves (Exhs. E and F), which give Topp and Pincus each "One share" of the common stock of the Corporation. Further, Defendants have already admitted that they have no documents relating to any payments they made for the protection and preservation of the 5th Floor (Defendants' response to Plaintiff's RFP No. 66 (Exh. G)), and as a result, they are not entitled to any offset for such payments, and the proceeds of the sale should be divided evenly between the parties.

### II. DEFENDANTS' MOTION UNDER RULE 19 FAILS BECAUSE THE COOP IS NEITHER A "NECESSARY" NOR AN "INDISPENSIBLE" PARTY

"The burden of demonstrating that a party is necessary rests with the moving party." *Greenwich Life Settlements, Inc. v. ViaSource Funding Grp., LLC*, 742 F. Supp. 2d 446, 455 (S.D.N.Y. 2010). Defendants have failed to meet their burden.

Courts assess three components in determining whether a non-party is "necessary" under Rule 19(a)(1). *C.D.S. v. Zetler*, 198 F. Supp. 3d 323, 335 (S.D.N.Y. 2016). "The first component asks whether the court can afford complete relief in the absence of the non-party. The second component focuses on whether the non-party's absence will impair or impede its ability to protect its interests. The third component asks whether the existing parties would be subject to double, multiple, or otherwise inconsistent obligations." *Id.* at 335-36. In a running theme, Defendants never mention (let alone apply) this standard, as they plainly do not meet it.

Of the three components, the second is the most significant: "With respect to Rule 19, the major question is whether the court can render a decision which will not impair the rights of the absent party." *Ente Nazionale v. Prudential*, 744 F. Supp. 450, 456 (S.D.N.Y. 1990). In other words, "Under Rule 19, necessary parties are only those parties whose ability to protect their interests would be impaired ***because of*** that party's absence from the litigation." *Trustees v. Fireservice*, 384 F. Supp. 3d 412, 420 (S.D.N.Y. 2019) (emphasis in original).

Here, ***not one*** of the three components supports Defendants' argument that the Coop is a necessary party. With respect to the ***first component***, this Court can indeed afford complete relief in the absence of the Coop because the Coop has no relationship to the requested relief in this action—namely, the sale of property jointly owned by Plaintiff and Defendants.[17] With respect to the ***second component***, the Coop's absence from the case at bar will not impair or impede its ability to protect its interests because in fact, the Coop is presently seeking in state court the exact remedy Topp seeks in this court—the recombining of the illegally split 5th Floor. In its Answer and Counterclaims in *Pincus v. Tashikan II*, the Coop seeks: a declaratory judgment

---

[17] The only arguable relationship the Coop has to Plaintiff's demand for the sale of the 5th Floor is the Coop Board's right to approve a potential purchaser. However, as Defendants helpfully point out, "in a partition action the approvals and board review typical for a cooperative corporation sale are not prohibitive because 'sale pursuant to judicial partition could and would be carried out in accordance with the By-Laws and proprietary lease.' *Stein v. Robb*, 2010 N.Y. Misc. LEXIS 1362, *6." (Defendants' Memo of Law (ECF No. 41) at 22).

"declaring that [Pincus] and Topp are obligated to restore the 5th floor of the Building to a single unit"; and a preliminary and permanent injunction "requiring [Pincus] and Topp to restore the 5th floor of the Building to a single unit . . . [and] permanently maintain [it] as a single unit." (ECF No. 40-10 ¶¶ 22, 27). As a result, with respect to this, the most significant of the three 19(a)(1) components, *Ente Nazionale*, 744 F. Supp. at 456, the Court's decision in the case at bar "will not impair the rights of the absent party," *id.*, because if Defendants prevail, this action will be without effect, and if Plaintiff prevails, the absent party—the Coop—will receive the exact result it seeks in its ongoing counterclaims in state court. With respect to the **third component**, the existing parties here would not be subject to double, multiple, or otherwise inconsistent obligations because a victory by Defendants here would produce no obligations, while a victory by Plaintiff would mean the sale of the floor, ending all association of the parties with each other and with the Coop, and immediately mooting the state action.[18] For all these reasons, the Coop is not a necessary party to this action under Fed. R. Civ. P. 19(a).

Further, even if the Coop were a necessary party—which it is not—"Rule 19 of the Federal Rules of Civil Procedure vests the court with wide discretion in deciding whether to proceed [even] in the absence of necessary parties . . . ." *Gallagher v. New York State Bd. of Elections*, 477 F. Supp. 3d 19, 38 (S.D.N.Y. 2020) (internal quotation and citation omitted). In other words, in order for the Court to grant dismissal on the basis of the failure to join a party, the party at issue must be not only "necessary" under Rule 19(a), but also "indispensible" under Rule 19(b). *Marvel Characters, Inc. v. Kirby,* 726 F.3d 119, 131-32 (2d Cir. 2013). Further, as

---

[18] To the extent Defendants contemplate further action against the Coop for "unlawfully issu[ing] shares and leases" (Defendants' Letter Motion to Dismiss (ECF No. 24) at 2), "potential securities violations," or "misrepresentation" (Defendants' Memo of Law (ECF No. 41) at 22), "Rule 19(a) does not require joinder of an absent party that can later be held responsible for contribution or indemnification," *Trustees*, 384 F. Supp. 3d at 419, and in any event, "[a] speculative risk of future litigation is insufficient to render [unnamed parties] necessary parties," *In re Lloyd's*, 954 F. Supp. 656, 676 n.5 (S.D.N.Y. 1997).

the Second Circuit has held, dismissal under Rule 19(b) ***should rarely be granted***: "[V]ery few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." *Jaser v. New York Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir. 1987).

Defendants again fail to lay out the relevant factors, which decisively favor Plaintiff. These factors are: "(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided [by the court]; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19(b). Substantial discretion is afforded to the district court in considering which factors to weigh and what weight to give them. *Envirotech v. Bethlehem,* 729 F.2d 70, 75 (2d Cir. 1984). Further, the 19(b) analysis "must be focused not on the broad question of whether [the absent party's] interests *might* be affected by the outcome of the case, but on the narrower question of whether the case simply cannot proceed without them." *von Bulow v. von Bulow*, 634 F. Supp. 1284, 1311 (S.D.N.Y. 1986) (emphasis in original).

**Here:** (1) a judgment rendered in the Coop's absence would not prejudice the Coop or the existing parties because Plaintiff here seeks a remedy identical to that sought by the Coop; (2) any possible prejudice could easily be lessened or avoided by this Court in fashioning its remedy by, for example, conditioning the sale of the 5th Floor on the Coop's approval of the new buyer; (3) a judgment rendered in the Coop's absence would be adequate, since it would resolve all issues between Plaintiff, Defendants, and the Coop[19]; and (4) Plaintiff here would not have an

---

[19] The only possible exception would be Defendants' threatened damages action against the Coop for a fraudulent sale, which in any case is not and will not be ripe until Plaintiff prevails in the case at bar. Further, query what damages Defendants may expect to plead if they lose this case and, following the sale of the 5th Floor, receive an estimated return on investment ("ROI") of an outlandish 48,000% ($4080 investment, $2,000,000 return).

adequate remedy if this action were dismissed for nonjoinder, because upon dismissal she would be forced to litigate her legitimate property claim in state court as a foreign national, living abroad, before a New York judge and jury and against a lifelong New Yorker—the precise prejudicial scenario for which the founding fathers enshrined diversity jurisdiction in the Constitution in the first place. U.S. Const. art. III, § 2, cl. 1.

In sum, Defendants' complete lack of analysis of the required factors with respect to this issue, in favor of conclusory statements such as, "[t]here is no question that Tashikan Corporation belongs in this suit, and therefore satisfied the requirements of Rule 19(a)" (Defendants' Memo (ECF No. 41) at 21), falls woefully short of proving that the Coop is *either* a necessary party under Rule 19(a) *or* an indispensible party under Rule 19(b).

**CONCLUSION**

Plaintiff Topp is now 86 years old and incapable of supporting herself economically, despite owning $2 million worth of real estate in a loft building which she herself found and developed, to the great benefit of all members of the Coop, and none more than Pincus. Absent the relief sought here, Plaintiff would be left without any remedy.

For all of the reasons set forth above, Plaintiff respectfully requests that this Court grant her Rule 56 Motion for Summary Judgment and issue an Order pursuant to RPAPL article 9 directing the partition by sale of the 5th Floor of the Building located at 160 Sixth Avenue, New York, NY 10013, plus costs and such other relief as the Court finds just and proper.

Dated: Chappaqua, New York              Respectfully submitted,
       August 30, 2021

                                   /s/ Noah Kupferberg

                                   NOAH KUPFERBERG, ESQ.
                                   734 King Street, Chappaqua, NY 10514
                                   (646) 335-3968, noahkup@gmail.com
                                   *Attorney for Plaintiff Sylvia Topp*